# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLESETTA LEE, | Case No. 1:13-cv-01054-SAB |
| Plaintiff, | ORDER PARTIALLY GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Charlesetta Lee ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 8, 9.)

Plaintiff applied for Social Security benefits due to impairments related to degenerative disc disease, hypertension, affective disorders, degenerative joint disease of the right knee, obesity, and carpal tunnel syndrome. For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is partially granted and this action is remanded to the Commissioner for further administrative proceedings.

/ / /

/ / /

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits on June 17, 2010. (AR 67.) Plaintiff's application was denied on August 24, 2010. (AR 55.) Plaintiff requested reconsideration of the denial October 19, 2010. (AR 60.) Plaintiff's application was denied after reconsideration on February 17, 2011. (AR 61.)

On November 7, 2011, a hearing took place before Administrative Law Judge Robert Milton Erickson ("the ALJ"). (AR 443.) A second hearing took place on April 2, 2012. (AR 498.) On April 26, 2012, the ALJ issued a written decision and found that Plaintiff was not disabled. (AR 26-38.) The Appeals Council denied Plaintiff's request for review on May 15, 2013. (AR. 5.)

### A.  Plaintiff's Hearing Testimony

Plaintiff was not represented by an attorney at the first hearing on November 7, 2011. (AR 446-450.)

Plaintiff lives in a home in Bakersfield with four of her grandchildren. (AR 455-456.) Plaintiff's grandchildren are 6, 8, 10 and 15 years old. (AR 456-457, 460.) Plaintiff sometimes prepares meals for her grandchildren, but also has older daughters that come over to help. (AR 461.) Plaintiff's sister-in-law comes over to help her almost every day. (AR 469-470.)

Plaintiff could walk five to ten minutes before having to stop and rest. (AR 458.) Plaintiff could sit for 30 minutes at a time. (AR 459.) Plaintiff has a driver's license, but does not drive. (AR 462-463.) Plaintiff used to take the bus, but stopped taking it because the bus stop was too far away. (AR 464.) Plaintiff goes to the grocery store when somebody else drives her. (AR 464-465.) Plaintiff has difficulty reaching for things above her shoulder at the grocery store. (AR 466.) Plaintiff also has to sit down if she waits in line for the cashier too long. (AR 466-467.) Plaintiff's sister-in-law also testified at the hearing on November 7, 2011 regarding Plaintiff's daily activities. (AR 473-

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 19.)

2

Plaintiff takes medication for her pain, but the medication makes her drowsy and tired. (AR 461.) Plaintiff's medications include Amlodipine Besylate, Losartan Potassium, Gabapentin, Vicodin, and Trazodone. (AR 484-488.)

Plaintiff has not received any formal vocational training. (AR 491.) Plaintiff attended school through the 9th grade. (AR 492-493.)

### B. VE Testimony

Linda Ferra ("the VE") testified as a vocational expert at the first hearing. (AR 492.) The ALJ provided the following first set of hypothetical limitations to the VE:

- Can lift or carry 50 pounds occasionally, 25 pounds frequently;
- Can stand or walk six hours in an eight hour work day;
- Can sit for six hours in an eight hour work day;
- Can frequently climb, stoop, and use upper extremities for gross and fine manipulation;
- Can perform constant complex tasks and simple repetitive tasks;
- No more than frequent interaction with the public, coworkers and supervisors;
- Can be anticipated to miss one day every two months on an unscheduled basis;
- No work involving life or death decisions;
- No work involving confrontation situations; and
- No work which requires high productivity, such as work that is paid by the piece.

(AR 493.) The VE testified that a person with such hypothetical limitations could perform work. (AR 493-494.)

The ALJ provided the following second set of hypothetical limitations to the VE:

- Can lift or carry 20 pounds occasionally, 10 pounds frequently;
- Can stand or walk two hours in an eight hour work day with the understanding that the individual can stand or walk no more than 10 minutes continuously;
- Can sit six hours in an eight hour work day with the understanding that the individual can sit no longer than 30 minutes continuously;
- Can never climb ladders;
- Can occasionally climb stairs, stoop, crawl, crouch, or kneel;

3

- Can occasionally reach above the shoulder with the right upper extremity;
- Can frequently use upper extremities for gross and fine manipulation;
- Can constantly perform complex tasks and simple routine tasks;
- No more than frequent interact with coworkers and supervisors;
- No more than frequent interaction with the public;
- Can be anticipated to miss one day from work every two months;
- No work involving life or death decisions;
- No employment requirement a confrontational work environment; and
- No work which requires high productivity, such as work that is paid by the piece.

(AR 494-495.) The VE testified that a person with such limitations could not perform any work.

At the second hearing on April 2, 2012, Lorian Hyatt testified as a vocational expert.[2] The ALJ provided the VE with the following third set of hypothetical limitations:

- Can lift or carry 20 pounds occasionally, 10 pounds frequently;
- Can stand or walk six hours in an eight hour work day, but no more than 30 minutes continuously;
- Can sit six hours in an eight hour work day, but no more than 30 minutes continuously;
- Can never climb ladders;
- Can occasionally climb stairs, stoop, crawl, crouch, or kneel;
- No more than frequent gross and fine manipulation;
- Able to understand, remember and carry out simple and detailed, but not complex, instructions; and
- Can adapt and interact with others, but may benefit from reduced interaction with the public.

(AR 504.) The VE testified that a person with such limitations could perform work as a security camera monitor, or a telemarketer. (AR 505.)

/ / /

---

[2] For simplicity's sake, the Court will refer to both Ms. Ferra and Ms. Hyatt as "the VE" unless further distinction is necessary.

4

The ALJ provided the VE with the following fourth set of hypothetical limitations:

- Can lift or carry 20 pounds occasionally, 10 pounds frequently;
- Can stand or walk six hours in an eight hour work day;
- Can sit for six hours in an eight hour work day;
- Can never climb ladders;
- Can occasionally climb stairs;
- Can occasionally stoop, crawl, crouch, or kneel;
- Can perform frequent gross and fine manipulation with the upper extremities;
- Capable of constant, simple and repetitive tasks as well as complex tasks;
- Only occasional interaction with the public, coworkers, and supervisors;
- Can be anticipated to miss one day of work every two months on an unscheduled basis;
- Can meet production goals, but at own pace; and
- No employment requiring life or death decisions or confrontational instances.

(AR 506.)  The VE testified that a person with such hypothetical limitations could work as a security camera monitor or a telemarketer.  (AR 507.)

### C. Medical Records

The administrative record includes medical records such as an undated and unsigned Case Analysis (AR 144-145), medical records from Dr. Emanuel V. Dozier, M.D. (AR 146-186) medical records from Bakersfield Memorial Hospital (AR 187-198), medical records from Clinica Sierra Vista (AR 199-211), a July 29, 2010 comprehensive internal medicine evaluation from Dr. Sarupinder Bhanggo, M.D. (AR 212-215), an August 18, 2010 Physical Residual Functional Capacity Assessment from Dr. M. Nawar (AR 216-220), an August 18, 2010 Case Analysis from Dr. M. Nawar, M.D. (AR 221-222), a January 11, 2011 comprehensive psychiatric evaluation from Dr. William Prince, Psy.D (AR 223-227) a February 15, 2011 Mental Residual Functional Capacity Assessment from Dr. Harvey Bilik, Psy.D (AR 228-231) a February 15, 2011 Psychiatric Review Technique from Dr. Harvey Bilik, Psy.D (AR 232-245) and medical records from Dr. Emmanuel V. Dozier, M.D. (AR 246-437).

///

**D.     The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since June 17, 2010, the application date;
- Plaintiff has the following severe impairments: degenerative disc disease, hypertension, affective disorders, degenerative joint disease of the right knee, obesity, and carpal tunnel syndrome;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; never climb ladders; occasionally climb stairs, stoop, crouch, crawl, kneel; bilateral upper extremity frequent gross and fine manipulation; constant complex tasks; constant simple repetitive tasks; occasional interaction with coworkers, supervisors and the public; no impairment in the ability to perform work activities on a consistent basis without special or additional instruction, but can be anticipated to miss 1 day of work every 2 months on an unscheduled basis; capable of meeting production goals but at own pace; no employments involving life or death decisions; no employments with duties requiring confrontational instances, such as police, security, or complaint departments;
- Plaintiff has no past relevant work;
- Plaintiff was born on July 23, 1958 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed;
- Plaintiff has a limited education and is able to communicate in English;
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work;

///

6

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, since June 17, 2010, the date the application was filed.

(AR 31-38.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## III.

## DISCUSSION AND ANALYSIS

Plaintiff contends that 1) the ALJ improper rejected the opinions of Dr. Dozier, Plaintiff's treating physician, 2) Plaintiff should be adjudged disabled per Medical Vocational Rule 201.09,

3) the ALJ improperly rejected Plaintiff's testimony regarding her limitations, 4) Plaintiff is precluded from working as a "security camera monitor" and in "telemarketing" because of her limitation of only occasional interaction with coworkers, supervisors and the public, 5) Plaintiff is precluded from working as a "security camera monitor" because she was limited to no employment involving life and death decisions and no employment requiring confrontational instances, 6) Plaintiff is precluded from working as a "telemarketer" because of lack of past work experience, and 7) the ALJ failed to ask the VE whether her testimony was consistent with the DOT.

### A.    The ALJ Did Not Err in Giving Little Weight to the Opinions of Dr. Dozier

Plaintiff argues that the ALJ erred by giving little weight to the opinions of her treating physician, Dr. Dozier.  "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("...generally a treating physician's opinion carries the most weight of the various types of physician testimony.")  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  Id. (quoting Murray v. Heckler, 722 F.3d 499, 502 (9th Cir. 1983)).

The ALJ gave little weight to Dr. Dozier's opinions because "his opinion is a conclusory statement that cites no supporting signs or findings.  Dr. Dozier's opinion is also inconsistent with his medical treatment notes, which show minimal musculoskeletal findings...."  (AR 36.)

Plaintiff contends that the ALJ's finding that Dr. Dozier's opinion was conclusory was impermissibly conclusory in itself.  Plaintiff further contends that the ALJ's finding is false, as the record includes x-rays which corroborate Plaintiff's limitations related to issues with her spine.

"[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole ... or by objective medical findings." Bastson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004).

The Court finds that the ALJ's finding that Dr. Dozier's opinions were conclusory, brief and unsupported by the record was proper. The conclusory and brief nature of Dr. Dozier's opinions is self-evident. Dr. Dozier signed reports in August 2005 and September 2006. (AR 257-259, 269-271.) The August 2005 report is largely incomplete. The first page of the report has a large slash over the first five questions, meaning Dr. Dozier declined to respond to these questions for whatever reason and instead simply wrote "Patient unable to work at this time." (AR 269.) The second page also has a large slash over all of the questions, with the brief comment "N/A totally disabled at this time." (AR 270.) The third page, regarding Plaintiff's mental capacities, is also incomplete, with a large slash along with the brief comment, "n/a patient totally disabled at this time." (AR 271.) The Court finds that the ALJ appropriately gave the opinions in the August 2005 report little weight.

Dr. Dozier's September 2006 report does not contain much more substance. In the report, Dr. Dozier indicated that Plaintiff could stand or walk 2-4 hours at a time by checking the appropriate box on the form report, but notably the section for "comments" was left blank. (AR 258.) Similarly, Dr. Dozier indicated that Plaintiff could sit for 2-4 hours a day but again declined to offer any comments supporting this conclusion. (AR 258.) Dr. Dozier opined that Plaintiff had no restrictions in using her hands or fingers for repetitive motions. (AR 258.) Dr. Dozier opined that Plaintiff is restricted in using her feet for repetitive movements because of "chronic low back pain and chronic leg pain bilaterally" and because "she suffers with intermittent muscle spasms." (AR 258.) Plaintiff is also restricted from environmental factors because "dampness & cold could exacerbate her chronic pain." (AR 258.) Dr. Dozier opined that Plaintiff could frequently lift up to 30 pounds, but the section asking for comments was left blank. (AR 259.) Dr. Dozier opined that Plaintiff could never climb or balance and only occasionally stoop, kneel, crouch, crawl and reach, but again left no supporting explanation in the form comments section. (AR 259.) With respect to Plaintiff's daily activities, social

functioning, ability to complete tasks and adapt to work, Dr. Dozier declined to provide any response, other than a large slash with "n/a" written next to it. (AR 260.)

Dr. Dozier's reports did not cite any objective medical findings. Moreover, the conclusory and brief nature of the reports is readily evident, given Dr. Dozier's frequent practice of leaving the "comments" section of the form report blank and drawing large slashes over large portions of the report and simply writing "n/a." Plaintiff argues that Dr. Dozier's report is nonetheless supported by certain x-ray images in the record, but Dr. Dozier provides no narrative explaining how his findings are consistent with these x-rays and thus it is unclear whether Dr. Dozier even considered the x-rays cited by Plaintiff. Moreover, the Court has no means to determine whether the x-ray images support Dr. Dozier's findings, as there is no explanatory narrative interpreting these x-rays from a qualified medical source. Further, contrary to Plaintiff's arguments otherwise, the ALJ provided his own interpretations and explained why more weight was given to the other medical source opinions in the record rather than Dr. Dozier's opinions.

Based upon the foregoing, the Court finds that the ALJ did not err in giving little weight to Dr. Dozier's opinions.

**B.    The ALJ Did Not Err by Failing to Adjudge Plaintiff Disabled Per Medical Vocational Rule 201.09**

Plaintiff argues that she should have been adjudged disabled per Medical Vocational Rule 201.09. At step five of the sequential analysis, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education and work experience." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1560(b)(3)). "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Id.

/ / /

1  "The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment." Tackett, 180 F.3d at 1101. "The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as 'the grids.'" Id.

Plaintiff argues that a disabled finding was mandated by the grids if Plaintiff were limited to sedentary work, given her age, education and work experience. However, Plaintiff's argument is flawed because Plaintiff was not limited to sedentary work. Sedentary work is defined as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). Light work, in contrast, is defined as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 416.967(b).

The ALJ determined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. Accordingly, Plaintiff was theoretically capable of performing some subset of light work, as opposed to being limited entirely to sedentary work. Plaintiff argues that she can only perform sedentary work because the jobs identified by the VE at the hearing were sedentary jobs. This argument fails, however, because the VE was asked to identify *any* jobs that Plaintiff could perform, not the most strenuous jobs Plaintiff could perform. Thus, the mere fact that the VE identified sedentary jobs does not mean Plaintiff was necessarily limited to sedentary work.

The grids state that Plaintiff would be found to be not disabled if capable of light work and found to be disabled if capable of sedentary work. Since the ALJ found that Plaintiff was capable of light work with additional nonexertional limitations, the use of the grids would have been inappropriate. See Tackett, 180 F.3d at 1101 (use of the grids justified where the completely and accurately represent a claimant's limitations). The grids did not completely and accurately represent Plaintiff's limitations since they

Based upon the foregoing, the Court finds that the ALJ did not err in not using the grids to determine that Plaintiff was disabled.

/ / /

/ / /

C.     **The ALJ Did Not Err In Rejecting Plaintiff's Testimony**

Plaintiff argues that the ALJ did not provide clear and convincing reasons to reject Plaintiff's subjective testimony regarding her pain and her limitations. "In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). "Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms 'must produce objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged...."'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). "If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id.

The ALJ rejected Plaintiff's testimony because her limitations were inconsistent with Dr. Bhangoo's medical findings, who "noted good strength and normal range of motion when he evaluated the claimant." (AR 35.)  It is proper for the ALJ to weigh the claimant's testimony against the opinions from physicians regarding the nature, severity and effect of the symptoms of which Plaintiff complaints. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ also noted that Plaintiff admitted that should could perform the work duties of a security camera monitor at the hearing. (AR 35-36.)  It is proper for the ALJ to discredit Plaintiff's testimony based upon internal inconsistencies. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Plaintiff argues that the medical findings are consistent with Plaintiff's testimony. However, the findings cited by Plaintiff support the ALJ's finding that the medical evidence could be expected to cause *some* degree of limitation—it does not rebut Dr. Bhangoo's findings or the ALJ's conclusions that the actual degree of limitation is less than what Plaintiff testified.

Plaintiff also challenges the ALJ's statement that Plaintiff has a poor work history. Plaintiff contends that poor work history cannot impact her credibility.  Poor work history is a proper reason to discredit a claimant's testimony. Thomas v. Barnhart, 278 F.3d 947, 959 (9th

Cir. 2002) (accepting ALJ's rationale that "extremely poor work history" negatively affected claimant's credibility regarding her inability to work). The record supports the ALJ's finding, as there is no record of Plaintiff ever holding a job for a substantial period of time and Plaintiff applied for disability benefits repeatedly since 1996. (AR 74-75.) The record indicates that Plaintiff has earned only $333.72 in wages since 1976. (AR 86.) Plaintiff also stated that she has "never worked," while also alleging that she believes her disability began on June 8, 2010. (AR 94.) Accordingly, Plaintiff's argument fails. The ALJ cited specific, clear and convincing reasons for discrediting Plaintiff's testimony.

Based upon the foregoing, the Court finds that the ALJ did not err in assessing Plaintiff's credibility.

### D. The ALJ Erred in Failing to Ask the Vocational Expert if her Testimony was Consistent with the DOT

Plaintiff argues that the ALJ erred because she failed to ask the vocational expert if her testimony conflicted with the DOT. Two different VE's testified at two separate hearings in this case, and both times the ALJ did not ask the VE whether her testimony conflicted with the DOT.

Social Security Ruling 00-4p states that the ALJ has an affirmative duty to ask the VE about any possible conflict between the VE's testimony and the information provided in the DOT. The Ninth Circuit has adopted this requirement. Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007).

Defendant does not dispute the fact that the ALJ did not ask the VE about any possible conflict between the VE's testimony and the DOT. Instead, Defendant contends that any such error by the VE was harmless.

Harmless error applies in the Social Security context. Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006). However, harmless error only applies where the ALJ's error did not materially impact his decision, was nonprejudicial to the claimant, was irrelevant to the ALJ's ultimate disability conclusion or occurred during a procedure or step the ALJ was not required to perform. Id. 1054-55. None of these conditions occurred in this case.

///

Plaintiff identifies a number of areas where the VE's testimony appeared to conflict with the DOT. For example, the VE was asked to identify jobs that Plaintiff could perform despite the fact that she was limited to only occasional contact with coworkers, supervisors, and the public. The VE identified the jobs of "security camera monitor" and "telemarketing," despite the fact that the DOT describes those jobs as including interaction with coworkers and the public. Common sense would suggest that a job as a telemarketer would involve frequent interaction with the public. Plaintiff also notes that the ALJ found that Plaintiff was precluded from any employment involving life and death decisions and employments requiring confrontational instances, including jobs in "security." Asking the VE the critical question of whether her testimony conflicted with the DOT would have resolved the question of whether this limitation would be compatible with work as a security camera monitor. Similarly, Plaintiff notes that the "telemarketer" job is considered semi-skilled, which appeared to have been incompatible with Plaintiff's limitation since she had no transferable work skills or recent education.

Defendant argues that Plaintiff relies on "supposition" and "her own lay-person interpretation of the DOT description" to conclude that the jobs were not compatible with her limitations. However, at the same time, Defendant similarly relies upon their own "supposition" and their own interpretation of the DOT to conclude that there is no conflict and any error was therefore harmless. The point of requiring the ALJ to inquire into any possible conflict is to avoid the reliance on mere "supposition" and create a record that includes qualified expert testimony to support the ALJ's decision. Therefore, the ALJ's failure to fulfill this requirement cannot be disregarded as harmless error.

Based upon the foregoing, the Court finds that the ALJ erred by failing to ask the VE whether their testimony conflicted with the DOT.

### E. Remand for Additional Administrative Proceedings

Plaintiff contends that this action should be remanded for an immediate award of benefits, as opposed to a remand for further administrative proceedings to determine whether an award of benefits is appropriate.

///

Generally, remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman, 211 F.3d at 1178). "The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (citing Harman v. Apfel, 211 F.3d 1172, 1174, 1178 (9th Cir. 2000)).

Additional administrative proceedings are necessary to resolve outstanding issues before a determination of disability can be made. Further, it is not clear from the record that the ALJ would be required to find Plaintiff disabled. As discussed above, the ALJ erred by failing to ask the VE whether a conflict existed between the VE's testimony and the DOT. This is not to say that a conflict actually existed or that there is no reasonable explanation for any deviation from the DOT. While Plaintiff insists there is a conflict, the Court only concludes that the ALJ erred in failing to ask the VE if there is a conflict. Without testimony from a source with the expertise of a VE, the Court cannot conclude that a conflict actually exists based upon Plaintiff's own interpretation of the DOT.[3]

Based upon the foregoing, the Court finds that remand for further administrative proceedings is appropriate.

//

---

[3] To the extent Plaintiff believes that a specific portion of the DOT description for a job conflicts with Plaintiff's limitations, Plaintiff can raise that issue to the VE on remand.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ erred by failing to ask the VE whether a conflict existed between her testimony and the information in the DOT. Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's appeal from the administrative decision of the Commissioner is PARTIALLY GRANTED;

2. This action is REMANDED to the Commissioner for further administrative proceedings;

3. JUDGMENT is entered in favor of Plaintiff Charlesetta Lee and against Defendant Commissioner of Social Security; and

4. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **September 2, 2014**

UNITED STATES MAGISTRATE JUDGE